UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA PENG,<br><br>        Plaintiff,<br><br>  v.<br><br>EMILIO T. GONZALES, ET AL.,<br><br>        Defendants.<br>_____/ | No. C-06-07872 JCS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AS MOOT AND PLAINTIFF'S MOTION FOR LEAVE OF THE COURT TO FILE AN AMENDED COMPLAINT**<br><br>**[Docket Nos. 24 & 27]** |

## I.    INTRODUCTION

Plaintiff, Jessica Peng, applied to the United States Citizenship and Immigration Services ("USCIS") in 1998 to adjust her status to that of Lawful Permanent Resident ("LPR"). After eight years, during which USCIS did not make a decision on her application, Plaintiff filed this action for a writ of mandamus to compel USCIS to complete the adjudication process. On April 20 and May 3 of 2007, USCIS issued conflicting notifications, the first approving and the second denying Plaintiff's adjustment of status application. Plaintiff then filed a Motion for Leave of the Court to Amend the Complaint ("the Motion to Amend"), seeking to add a claim for declaratory relief in the form of this Court's determination that Plaintiff's adjustment of status application was completed at the time she received the first notification from USCIS, and, therefore, Defendants could not revoke Plaintiff's LPR status without adhering to the procedural requirements enumerated in the Code of Federal Regulations for rescinding permanent residence. Defendants concurrently filed a Motion to Dismiss the Complaint as Moot ("the Motion to Dismiss").

A hearing on the Motions occurred on Friday, June 29, 2007, at 9:30 a.m. For the reasons stated below, both motions are GRANTED.[1]

## II. BACKGROUND

### A. Statutory and Regulatory Framework Governing Adjustment of Status

Adjustment of status is governed by section 245 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255. Section 1255(a) states that:

> [t]he status of an alien who was inspected and admitted or paroled into the United States. . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). Although the text of section 1255 expressly authorizes the Attorney General to adjust status, that authority is now vested in the Secretary of Homeland Security by virtue of the Homeland Security Act of 2002, 6 U.S.C. §§ 101 *et seq.* 6 U.S.C. § 271(b); *see also Clark v. Martinez*, 543 U.S. 371, 375 n5 (2005) (noting that under similar provision of the INA, authority formerly exercised by the Attorney General and the Immigration and Naturalization Service ("INS") was transferred to the Secretary of Homeland Security and divisions of that Department [such as USCIS] by the Homeland Security Act); *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 889 n2 (9th Cir. 2004) (noting that although a statute referred to the Attorney General as the individual with authority to revoke a visa, such authority now properly resides with the Secretary of Homeland Security).[2]

Under the Homeland Security Act, the INS, which was a division of the Department of Justice, was abolished as of March 1, 2003. 6 U.S.C. § 291(a). Many of the INS's functions, including the adjudication of adjustment of status applications, were then transferred to USCIS, a

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

[2] The statute in question in *ANA Int'l* was 8 U.S.C. § 1155, which has since been amended, replacing the reference to the Attorney General with a reference to the Secretary of Homeland Security. Pub. L. 108-458 § 5304(c).

division of the newly created Department of Homeland Security. 6 U.S.C. § 271(b). As a result of this transfer, the authority to adjudicate adjustment of status applications is now vested in the Director of USCIS. *Id.*; 8 C.F.R. § 245.2(a) (granting USCIS jurisdiction to adjudicate adjustment of status applications). For convenience, this order refers to the decision-making authority under section 1255(a) by a blanket reference to USCIS.

The application for adjustment of status to that of lawful permanent resident is USCIS Form I-485. 8 C.F.R. § 299.1. To be eligible for adjustment of status to LPR on the basis of a family relationship to a citizen or a lawful permanent resident, an applicant must have an approved immigrant visa petition, the Petition for Alien Relative (Form I-130). *See* 8 U.S.C. § 1255(a); 8 C.F.R. §§ 204.1(a)(1), 245(a)(2), 299.1.

The Code of Federal Regulations specifies the requirements for adjudication of an application submitted to USCIS. *See* 8 C.F.R. § 103.2(b). An applicant must demonstrate that "she is eligible for the requested benefit at the time of filing the application;" that is, she must (1) submit an application, (2) she must be eligible for an immigrant visa and (3) a visa number must be immediately available to her at the time the application is submitted. *See* 8 U.S.C. § 1255(a); 8 C.F.R. § 245.2(a)(2). Additionally, all forms must be properly completed and all fees paid before an application may be adjudicated. 8 C.F.R. § 103.2(b).

An applicant for adjustment of status under section 1255(a) may be approved only if the applicant demonstrates eligibility by fulfilling the three statutory requirements of 8 U.S.C. § 1255(a) listed above, *and* it is determined that the applicant warrants a favorable exercise of discretion. 8 U.S.C. § 1255(a); 8 C.F.R. § 103.2(a)(8)(i).

When USCIS reaches a decision on a particular case, the applicant "shall be notified of the decision of the director." 8 C.F.R. § 245.2(5)(i). The Code of Federal Regulations refers to a notification of the decision on an adjustment of status application as a "written decision." 8 C.F.R. § 103.2(b)(19) ("An applicant or petitioner shall be sent a written decision of his or her application. . . . Where the applicant or petitioner has authorized representation . . . that representative shall also be notified").

An approval is noted on Form I-181, Memorandum of Creation of Record of Lawful Permanent Residence. 8 C.F.R. § 299.1. The notification of USCIS's decision is issued to the applicant as Form I-291. *Id.* The date of the applicant's adjustment to permanent residence status "shall be recorded as of the date of the order approving the adjustment of status." 8 C.F.R. § 245.2(5)(ii).[3] If a decision is to be adverse to the applicant and is based on derogatory information unknown to the applicant, she must be notified of the intent to deny the application and be provided with an opportunity to present evidence rebutting the agency's information. 8 C.F.R. § 103.2(b)(16)(i).

A permanent resident card, Form I-551 (popularly known as a "Green Card") is eventually issued to the individual whose status has been adjusted. *See* Charles Gordon *et al.*, *Immigration Law and Procedure* § 51.06(e) (2006). As it may take several months for the permanent resident card to arrive, the immigration agency will place a temporary I-551 stamp in the permanent resident's passport to facilitate travel outside the United States. *Id.* Both the temporary I-551 passport stamp and the I-551 "Green Card" are deemed evidence of permanent resident status by federal regulations, as are other official agency records that have been "issued or endorsed to show admission for permanent residence." 8 C.F.R. § 103.2(b)(17). "[I]n the absence of countervailing evidence, such official records will be regarded as establishing lawful admission for permanent residence." *Id.*

The Code of Federal Regulations provides that if it appears to a District Director of USCIS that an applicant who was granted permanent residence was in fact ineligible for adjustment of status, "a proceeding shall be commenced by the personal service upon such a person of a notice of intent to rescind, which shall inform him or her of the allegations upon which it is intended to rescind the adjustment . . . of status." 8 C.F.R. § 246.1. The notice also must inform the individual that: (1) she has 30 days in which to answer the allegations and (2) she may request a hearing before

---

[3] USCIS Adjudicator's Field Manual directs the adjudicator to stamp the I-485 application's "action block" with security ink to denote approval. The Manual indicates that, depending on local procedures, "a work sheet for clerical action may be completed, or the adjudicator may update the CLAIMS system to initiate generation of an approval notice to the applicant" or the adjudicator may "manually complete processing." *See* USCIS Adjudicator's Field Manual at § 10.3(g).

4

an immigration judge, at which she may be assisted by counsel or the representative of her choice. *Id.*

### B.    Facts

Plaintiff Jessica Peng is an 18-year-old woman who was lawfully admitted into the United States. (Complaint ¶ 1.)  Plaintiff is currently in the United States on a student visa. *Id*.  On November 18, 1998, Plaintiff, along with her two sisters, submitted I-485 applications to the San Francisco District Office of the Immigration and Naturalization Service ("INS") for adjustment of status to that of Lawful Permanent Resident under section 245 of the Immigration and Nationality Act ("INA"). *Id*. ¶ 2; *see* (Plaintiff's Ex. 1).  Plaintiff's father, a U.S. citizen, concurrently filed a Petition for Alien Relative (Form I-130) to obtain an immigrant visa for Plaintiff. (Complaint ¶ 2; Ex. 1.)

On April 20, 2007, USCIS approved the Petition for Alien Relative (I-130). (Proposed Amended Complaint ¶ 4; Ex. 2.)  On the same day, USCIS issued a letter addressed to Plaintiff and bearing the stamped signature of the Field Office Director, Robin Barrett, informing Plaintiff that her adjustment of status had been granted.  (Proposed Amended Complaint ¶ 5; Ex. 3.)  Also on April 20, Assistant United States Attorney ("AUSA") Ila Deiss spoke to Plaintiff's attorney, David Sun, on the telephone, informing him that Plaintiff's I-485 application had been approved.  (Sun Declaration, filed in support of Plaintiff's Reply to Defendants' Opposition to Amending the Complaint ("Sun Reply Decl.") ¶ 2.)  AUSA Deiss then faxed the approval notice to Plaintiff's attorney. *Id.* ¶ 4.

USCIS subsequently contacted AUSA Deiss by e-mail, saying that "they were considering denying Plaintiff's application in light of further information they had received and had not formally issued the approval letter that had been sent to [AUSA Deiss] by facsimile on April 20, 2007." (Deiss Declaration filed in Opposition to Amending the Complaint ("Deiss Reply Decl.") ¶ 4.)  On May 3, 2007, USCIS issued a letter, addressed to Plaintiff and signed by an individual who apparently signed on behalf of the same USCIS Field Office Director who signed the April 20 letter, Robin Barrett, informing Plaintiff that her I-485 application had been denied.  (Proposed Amended Complaint ¶ 6; Ex. 4.)

5

Defendants then issued a letter of clarification on June 8, 2007, again signed by Robin Barrett, informing Plaintiff that the April 20 approval letter was "not officially issued by [USCIS]" and "did not represent the final decision" on her application for permanent residence. (Sun Reply Decl., Ex. C)  Rather, the letter was "part of an internal communication with the US Attorney's Office and was prematurely issued" to Plaintiff's attorney. *Id.*  The letter stated further that the San Francisco Field Office did not directly notify Plaintiff or her attorney that her I-485 application was approved. *Id.*  Finally, the June 8 letter stated that no USCIS databases were updated, nor did USCIS commence production of Form I-551 ("Green Card"). *Id.*

### C. Procedural History

Plaintiff filed a Complaint for Declaratory Relief in the Nature of Mandamus to Compel Administrative Action by the U.S. Citizenship and Immigration Services ("the Complaint") on December 26, 2006, seeking the Court's assistance in compelling adjudication of her adjustment of status application.  Plaintiff also sought attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.  On the same day, Plaintiff's sisters filed similar actions, which were related to this case in an order dated January 30, 2007.

On May 8, 2007, the related cases brought by Plaintiff's sisters, Joanna and Joy Peng, were dismissed by stipulation of the parties after their I-485 applications were adjudicated, granting them permanent residence.  At that time, the parties stipulated to the continuance of the May 18 case management conference to June 29, 2007.  The parties stipulated further that by May 11, 2007, Plaintiff would file a motion for leave of the court to amend the complaint, and Defendants would file a motion for summary judgment.

Plaintiff filed the Motion to Amend on May 11, 2007, seeking leave to amend her Complaint to address the new issues arising as a result of USCIS's issuance of contradictory notifications of the decision made on her I-485 application.  (Sun Declaration, filed as an attachment to Plaintiff's Motion to Amend ("Sun Motion Decl.") ¶¶ 6-9.)  In particular, Plaintiff seeks to add a claim for declaratory relief in the form of the Court's judgment that Plaintiff is a lawful permanent resident based on USCIS's April 20 approval notice.  (Proposed Amended Complaint ¶ 22.)

6

1    Defendants concurrently filed a Motion to Dismiss on the basis that Plaintiff's application
2 has been adjudicated and, therefore, the Court can grant no further relief.   (Motion to Dismiss at 3-
3 4.) In the Motion to Dismiss, Defendants refer only to the May 3 denial of the I-485 application,
4 asserting that Plaintiff's application has been conclusively adjudicated and thus, her case is moot.
5 *Id.*

6    In the Opposition to the Motion to Dismiss ("Plaintiff's Opposition"), Plaintiff disputes
7 Defendants' assertion that her application has been decisively adjudicated, averring that "there is no
8 clear or intelligible adjudication" because Defendants issued notices both approving and denying her
9 application. (Plaintiff's Opposition at 2.)  Plaintiff avers that this Court can provide effective relief
10 by rendering a declaratory judgment on the basis of the April 20 approval notice.  *Id.*  At oral
11 argument, the Court confirmed that Plaintiff's claim is still a mandamus action, but Plaintiff now
12 seeks declaratory relief in the form of a judgment that Plaintiff is a lawful permanent resident rather
13 than relief compelling adjudication.

14    On June 8, 2007, Defendants filed a Reply in Support of the Motion to Dismiss and
15 Opposing the Motion to Amend ("Defendants' Reply").  Defendants argue that USCIS has
16 conclusively adjudicated Plaintiff's application and provided any necessary clarification of her
17 status by issuing a letter on June 8, 2007, reiterating USCIS's denial of Plaintiff's adjustment of
18 status application. (Defendants' Reply at 2.)  Defendants state further that USCIS's decision is not
19 appealable in this Court.  *Id.*

20    In her Reply in Support of the Motion to Amend ("Plaintiff's Reply"), Plaintiff's position
21 seems to have changed somewhat from the position stated in her Opposition to the Motion to
22 Dismiss.  Rather than arguing that there has been no "clear and intelligible adjudication," Plaintiff
23 now asserts that the application *was* adjudicated and that the April 20 letter demonstrates that
24 USCIS granted her LPR status.   (Plaintiff's Reply at 2.)  She rejects Defendants' argument that her
25 claim is a challenge of a discretionary denial by USCIS that may not be appealed.  *Id.*

7

**III.    ANALYSIS**

**A.    The Motion to Dismiss**

Defendants assert that Plaintiff's claim seeking adjudication of her application is moot because they have now adjudicated her claim. The Court agrees.[4]

Under Article III of the United States Constitution, a federal court's jurisdiction depends on the existence of a "case or controversy." *See Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n. 3 (1964). When the issues in a case are no longer "live" or the parties lack a legally cognizable interest in the outcome, the case becomes moot. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). To maintain her claim, a party must continue to have "a personal stake in the outcome of the suit." *Abdala v. INS*, No. 06-55774, 2007 U.S. App. LEXIS 12867 at *5 (9th Cir. May 8, 2007) (citing *United States v. Verdin*, 243 F.3d 1174, 1177 (9th Cir. 2001)). In determining whether a case is moot, "the question is not whether the precise relief sought at the time the application for an injunction was filed is still available [but rather] whether there can be any effective relief." *Northwest Envtl. Def. Ctr. v. Gorden*, 849 F.2d 1241, 1245-1246 (9th Cir. 1988) (citations omitted).

Although a court must dismiss a petition for writ of mandamus that has been rendered moot by subsequent events, the party asserting mootness bears "the heavy burden of establishing that there is no effective relief remaining for a court to provide." *GATX/Airlog Co. v. U.S. Dist. Court*, 192 F.3d 1304, 1306 (9th Cir. 1999). A case is moot "only if interim events have completely and irrevocably eradicated the effects of alleged improper conduct raised in the petition for writ of mandamus." *Ordonez-Garay v. Chertoff*, No. CV F 06-1835, 2007 U.S. Dist. LEXIS 40589 (E.D. Cal. May 25, 2007) (citing *GATX*, 192 F.3d at 1306). In the immigration context, a claim for mandamus relief compelling adjudication of an adjustment of status application is moot if the application has been adjudicated. *See Kaddoura v. Gonzales*, No. 06-1402, 2007 U.S. Dist. LEXIS

---

[4] To the extent that Defendants seem to suggest in their briefs that their mootness argument extends to the new claim Plaintiff proposes to add to the complaint, the Court declines to consider this argument. Defendants' motion was filed with respect to the *original* Complaint, and is properly considered only in connection with that Complaint. Nonetheless, any arguments raised by Defendants with respect to the Proposed Amended Complaint will be considered below in determining whether Plaintiff should be permitted to amend her Complaint.

8

37211 at \*\*4-5 (W.D. Wash. May 21, 2007) (holding that USCIS's adjudication of plaintiff's I-485 application mooted claim for relief in the form of mandamus to adjudicate).

At oral argument, Plaintiff conceded that her application has been adjudicated, and thus the original claim seeking adjudication of her application is moot. Accordingly, the Court GRANTS Defendants' Motion to Dismiss.

### B.      Plaintiff's Motion to Amend

#### 1.      Rule 15 Standard

Because Defendants have already filed a responsive pleading in this action, Plaintiff must obtain leave of the court to amend her complaint. *See* Fed. R. Civ. P. 15(a). Federal Rule of Civil Procedure 15(a) provides that "leave shall be freely given when justice so requires." *Id.* In determining whether to grant leave to amend, a court must consider the following factors: "1) bad faith, 2) undue delay, 3) prejudice to the opposing party, 4) futility of amendment, and 5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). The United States Court of Appeals for the Ninth Circuit ("the Ninth Circuit") has observed that it is "the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003). In the absence of prejudice, or a "strong showing" of any of the remaining factors, "there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* The party opposing amendment bears the burden of demonstrating prejudice. *DCD Progs., Ltd. v. Leighton*, 833 F.3d 183, 187 (9th Cir. 1987).

#### 2.      The Motion to Amend Was Brought in Good Faith

Here, there is no apparent bad faith on the part of the plaintiff. Plaintiff's original Complaint sought resolution of her immigration status; Defendants' recent actions have not conclusively resolved that issue. (Motion to Amend at 2.)

#### 3.      The Motion to Amend is Timely

In evaluating "undue delay," a court must inquire as to whether the plaintiff knew or should have known the facts and theories raised in the amendment at the time of the original complaint. *Jackson v. Bank of Hawaii*, 902 F.3d 1385, 1388 (9th Cir. 1989). Here, Plaintiff learned of the facts

9

that gave rise to the claim she seeks to add on May 3, 2007.  (Motion to Amend at 2.)  She brought the Motion to Amend eight days later.  *Id.*  Accordingly, there is no undue delay.  *See Jackson*, 902 F.3d at 1388.

### 4. The Motion to Amend Does not Unduly Prejudice Defendants

Defendants will not be unduly burdened by Plaintiff's Motion to Amend.  *See id.* (finding amendment improper because it would result in impermissible prejudice in the form of (1) nullification of prior discovery; (2) requiring unduly burdensome future discovery and (3) requiring relitigation of a secondary issue).  Here, no discovery has taken place.  Unlike the motion to amend at issue in *Jackson*, which sought to add a claim based on a new legal theory applied to the same factual circumstances, Plaintiff's Motion to Amend is based on the development of new facts.  *See id.* at 1387; (Sun Motion Decl. ¶ 7).  Therefore, Plaintiff's Motion to Amend will not unduly prejudice Defendants at this early stage of the proceedings.

### 5. The Motion to Amend is not Futile

Plaintiff's proposed claim for declaratory relief is a new claim based on a new set of facts. Plaintiff asks the Court to declare, as a matter of law, that she assumed LPR status on April 20, 2007.  (Plaintiff's Reply at 2.)

Defendants' pleadings state that allowing amendment of the Complaint is "a waste of judicial resources" because the April 20 letter was not "issued" and USCIS denied Plaintiff's application in the May 3 letter.  (Defendants' Reply at 2.)  Defendants further assert that USCIS's decision "is not appealable in this Court."  *Id.*  In addition, Defendants assert that this Court lacks subject matter jurisdiction to hear Plaintiff's claim because the Illegal Immigrant Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") strips federal courts of jurisdiction to review decisions denying adjustment of status.  *See* 8 U.S.C. § 1252(a)(2)(B). In other words, Defendants assert that: (1) this Court does not have subject matter jurisdiction to hear Plaintiff's claim, and (2) even if subject matter jurisdiction were proper, the April 20 approval notification, as a matter of law, cannot constitute an adjustment of status and, therefore, the claim fails.  For the reasons stated below, the Court rejects both arguments.

10

### a. Subject Matter Jurisdiction is Proper

IIRIRA strips federal courts of jurisdiction to hear some immigration claims. *See* 8 U.S.C. § 1252(a)(2); *Hernandez v. Ashcroft*, 345 F.3d 824, 845 (9th Cir. 2003) (noting that IIRIRA bars a district court's review of the discretionary aspect of a decision to deny an individual application for adjustment of status). However, the Court concludes that IIRIRA does not deprive it of subject-matter jurisdiction in this case because Plaintiff's claim challenges USCIS's ministerial duty to abide by administrative procedures governed by statute.

"In the absence of a specific statutory provision to the contrary, district courts have jurisdiction to review agency action as part of their general federal question jurisdiction." *Proyecto San Pablo*, 189 F.3d at 1136 n5 (finding that essentially identical statutory language in the Immigration Reform and Control Act ("IRCA") prevented a district court's substantive review of the denial of an individual application, but did not preclude collateral challenges to administrative practices employed by the INS in processing applications). "This general rule applies even in the post-IIRIRA immigration context." *ANA Int'l*, 393 F.3d at 890. The question becomes, therefore, whether IIRIRA specifically prohibits this Court's review of a challenge to USCIS's procedures that effectuate adjustment of status. For the reasons stated below, the Court concludes it does not.

Section 1252 of IIRIRA provides, in relevant part:

> Judicial Review of Orders of Removal
> (a) Applicable provisions
>     [ . . . ]
> (2) Matters not subject to judicial review
>     [ . . . ]
> (B) Denials of discretionary relief. Notwithstanding any other provision of law . . . no court shall have jurisdiction to review –
> (i) any judgment regarding the granting of relief under [various provisions of the INA, including section 245], or
> (ii) any other decision or action of the Attorney General the authority for which is specified under this title to be in the discretion of the Attorney General. . . .

8 U.S.C. § 1252(a) (as amended by the Real ID Act, Pub. L. 109-13 (2005)). Thus, IIRIRA revokes a federal court's jurisdiction to review actions that are specified by the statute as being within the discretion of USCIS. However, the Ninth Circuit has cautioned that, because there is a strong presumption in favor of judicial review of administrative actions, the jurisdiction-stripping

11

provisions of IIRIRA are to be interpreted narrowly. *ANA Int'l*, 393 F.3d at 891 (citing *INS v. St. Cyr*, 533 U.S. 289, 298 (2001)); *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (criticizing broad reading of provision and requiring "much narrower" interpretation).

Any purely legal, non-discretionary question that is a factor in the immigration agency's decision may be reviewed by a district court, whether or not the decision as a whole is discretionary. *Id.* at 895. For example, if a decision is governed by a legal standard expressed in a statute, the decision is reviewable for clarification of the legal standard. *Id.* at 891. Similarly, if a statutory provision granting decision-making authority to USCIS sets out standards circumscribing the decision, the decision is not wholly in the discretion of USCIS and thus is not shielded from review by section 1252(a)(2)(B). *Id.*; *see Hernandez*, 345 F.3d at 845-46 (holding that because Board of Immigration Appeals' decision was contrary authority specified by regulations it was not a discretionary action, and noting that a determination of eligibility for adjustment of status is clearly reviewable because it is governed by standards expressed in a statute). Even if a statute gives USCIS discretion, a court retains jurisdiction to review whether a particular exercise of discretion exceeds the discretionary authority specified by the statute in question. *Hernandez*, 345 F.3d at 847 (citing *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003)) ("When [USCIS] acts where it has no authority to do so, it does not make a discretionary decision"). Finally, USCIS has no discretion to make a decision that is contrary to law. *Id.* at 846 (citing *Mejia v. Ashcroft*, 298 F.3d 873, 878 (9th Cir. 2002).

Here, Plaintiff does not challenge a discretionary decision to deny her adjustment of status application. Rather, Plaintiff challenges USCIS's authority to issue such a denial after her I-485 application had apparently been approved two weeks earlier. (Plaintiff's Reply at 1-2.) Like the plaintiffs in *Proyecto San Pablo*, whose claims were not barred by the jurisdiction-stripping provisions of IRCA because their claims were *procedural* challenges that were collateral to any decision on the merits, the Plaintiff in the instant case challenges the procedures for granting and rescinding status, not the discretionary decision to grant or deny her application. *See Proyecto San Pablo*, 189 F.3d at 1137, 1140.

The Code of Federal Regulations specifies that upon approval, the applicant's permanent residence *shall* be recorded; thus, recording the approval of the I-485 is not discretionary. *See* 8 C.F.R. § 245.2(a)(5); *Hernandez*, 345 F.3d at 847-49. Additionally, the procedures to be used in connection with rescission of an adjustment of status application are governed by federal statutes and regulations, and therefore are not within the discretionary authority of USCIS. *See* 8 U.S.C. § 1256; 8 C.F.R. § 246.1 (mandating procedures to be followed in rescission actions). Therefore, just as in *Hernandez*, where the court found that it had jurisdiction to consider whether the INS acted in conformity with the federal statute in determining an applicant's eligibility for adjustment of status, whether USCIS allegedly contravened federal statutes and regulations in the instant case by issuing a "denial" after an adjustment had been granted is not barred from review by section 1252(a)(2)(B). *See Hernandez*, 345 F.3d at 847-49.

Although the Court's subject matter jurisdiction does not extend to discretionary decisions to grant or deny an adjustment of status, the Court does have jurisdiction to review non-discretionary aspects of that decision. Plaintiff's new claim turns on a non-discretionary duty to give effect to a completed adjudication and therefore may be reviewed by this Court.

        **b.**    **Whether Plaintiff's Adjustment of Status Was Granted on April 20 Is a Mixed Question of Law and Fact That Cannot be Resolved at This Stage of the Proceedings**

Defendants assert that even if the Court does have subject matter jurisdiction over Plaintiff's proposed new claim, the claim fails as a matter of law because USCIS could not have conferred lawful permanent resident status upon Plaintiff prior to the May 3 denial of adjustment of status. The Court disagrees.

First, Defendants do not cite any authority compelling the conclusion that the April 20 approval notice could not have constituted an adjustment of Plaintiff's status. Moreover, the Court's own review of the case law has not revealed any cases that would support that contention. Additionally, neither the statutes nor the regulations governing adjustment of status specify when an adjustment of status becomes effective. *See* 8 U.S.C. § 1255(b); 8 C.F.R. § 245.2(a)(5)(ii); *see also* Stanley Mailman & Stephen Yale-Loehr, "The INS Notice of Approval: When It Can't Be Trusted," 8 *Bender's Immigr. Bull.* 373, 374 (noting that even INS internal manuals do not require

13

1   endorsement of any forms before the decision to adjust status becomes effective).  Instead, the
2   standard set forth by the Ninth Circuit for determining whether an applicant's status has been
3   adjusted suggests that Plaintiff's status will turn on questions of fact that are not appropriately
4   addressed at this stage of the case.  *See Berahmand v. INS*, 549 F.2d 1343, 1345-46 (9th Cir. 1977).

5   In *Berahmand*, the plaintiff, Mr. Berahmand, applied for permanent residence on the basis of
6   his marriage to a United States citizen.  *Id.* at 1344.  Mr. Berahmand's application for permanent
7   residence was apparently approved, as evidenced by an approval stamp on an I-181 form, although
8   there were "marks" "drawn through" the stamp.  *Id.*  Mr. Berahmand did not receive any written
9   notice of approval, but he testified that the Immigration Examiner who interviewed him told him his
10  application was approved.  *Id.* at 1344-45.

11  During subsequent divorce proceedings, Mr. Berahmand's wife withdrew the visa petition
12  she had filed on her husband's behalf.  *Id.* at 1344.  At that point, the INS sent the applicant a
13  "decision" denying his application for adjustment of status and instituted deportation proceedings.
14  *Id.*

15  Mr. Berahmand initially appealed the decision to an Immigration Judge, who found that Mr.
16  Berahmand was deportable because he had overstayed his visa and had not been granted LPR status.
17  *Id.* at 1345.  The Board of Immigration Appeals ("BIA") affirmed.  *Id.*  Mr. Berahmand then
18  appealed to the Ninth Circuit.  The Ninth Circuit set forth a two-part burden-shifting framework for
19  establishing that an adjustment of status had occurred.  *Id.* at 1345-46.  First, the plaintiff must
20  make a prima facie case for her adjustment of status.  *Id.*  In *Berahmand*, the court held that the
21  approved I-181 form was prima facie evidence that Mr. Berahmand had been granted permanent
22  residence.  *Id.* at 1345-46.  The burden then shifts to the agency to rebut the prima facie showing
23  with clear, convincing and unequivocal evidence.  *Id.* (citing *Trias-Hernandez v. INS*, 528 F.2d 366,
24  368 (9th Cir. 1975)).

25  The INS attempted to rebut Mr. Berahmand's prima facie case by pointing to evidence that:
26  (1) marks on the I-181 approval stamp demonstrated an intention to void approval; (2) the INS
27  continued investigating the applicant's admissibility after the I-181 was stamped, implying that
28  adjustment had not been granted and (3) the applicant had not received the required notification that

14

his application had been approved. *Id.* at 1345. The court found this evidence insufficient to overcome the Mr. Berahmand's prima facie showing that his status had been adjusted, and remanded the case to the BIA. *Id.* at 1345-46. The court also noted, in dicta, that the INS failed to call its own examiner to testify about his actions and intentions and therefore the INS's arguments were "speculation." *Id.* at 1345.

Here, Plaintiff's allegations, which the court assumes to be true for purposes of this motion, are sufficient to establish a prima facie case that her status has been adjusted; she received a letter, stamped with the signature of the Field Office Director of USCIS and addressed to Plaintiff, informing her that her adjustment of status application has been approved. *See* 8 C.F.R. § 103.2(b)(17); (Sun Motion Decl., Ex. 3). Defendants have not yet rebutted Plaintiff's prima facie case with clear, convincing and unequivocal evidence.

The Court notes that it has found only one case in this district that addresses an issue similar to the one in the instant case. *See Bassey v. INS*, No. 01-4035, 2002 U.S. Dist. LEXIS 19726 (Oct. 9, 2002). In that case, the court held that a letter notifying an applicant of the approval of his adjustment of status application could not have conferred LPR status because the applicant was statutorily ineligible for adjustment. *Id.* at *17-18. That case does not, however, persuade the Court that Plaintiff's Motion to Amend should be denied.

The plaintiff in *Bassey* first attempted to obtain permanent resident status by marriage to a United States citizen in 1992. *Id.* at *2. After an investigation, the INS determined that at the time Mr. Bassey married his citizen-wife in the United States, he was already married to a non-citizen. *Id.* In 1997, the INS denied Mr. Bassey's application for permanent residence, concluding that his marriage to a United States citizen was a fraudulent attempt to secure immigration benefits. *Id.*

In 1999, having divorced both previous wives, Mr. Bassey again applied for permanent residence after marrying another United States citizen. *Id.* at *3. The issue before the court in *Bassey* arose from this second application. In June, 2000, the INS sent Mr. Bassey a letter informing him that his adjustment of status application had been approved and, the following day, stamped his passport with a temporary I-551 stamp. *Id.* However, the I-130 immigrant visa filed on Mr. Bassey's behalf had not been approved prior to issuing the notification of approval of the adjustment

15

of status application. *Id.* at *15. The INS "formally denied" Mr. Bassey's adjustment of status application in September, 2001. *Id.* at *13.

Mr. Bassey filed a motion for summary judgment, claiming that the INS failed to provide proof of LPR status as required by federal regulations, and also claiming that his due process rights were violated because he was not afforded the procedural protections of the regulations governing rescission of status. *Id.* at **4-5. The INS argued that Mr. Bassey's status had never been adjusted and that the denial was mandated by federal statute.[5] *Id.* at **13-14. The court agreed with the INS. *Id.* at *18.

*Bassey* is distinguishable. First, *Bassey* was decided on summary judgment based on a full record. *See id.* at **17-18. Second, it was undisputed that, unlike the instant case, the I-130 visa petition for Mr. Bassey had been denied and therefore the INS lacked the authority to adjust his status. *Id.* at **15-16. At a minimum, therefore, Plaintiff should be permitted to amend her complaint so that she has an opportunity for discovery regarding these factual questions. Accordingly, the Court concludes that amendment of the complaint is not futile and GRANTS Plaintiff's motion.

## IV.     CONCLUSION

For the reasons stated above, the Motions are GRANTED. Plaintiff's original claim for mandamus relief in the Complaint is dismissed as moot. Plaintiff shall be permitted to file an amended complaint based on the conflicting notifications issued by Defendants. As stated at oral argument, Defendants will produce to Plaintiff the complete administrative file relating to Plaintiff's adjustment of status application within thirty (30) days of the June 29, 2007 hearing. A further Case Management Conference is scheduled for **August 10, 2007, at 1:30 p.m.** A Joint Case Management Statement shall be filed seven (7) calendar days before the Case Management Conference.

---

[5] The Marriage Fraud Act prohibits the adjustment of status on the basis of marriage to a citizen or permanent resident if the applicant has previously entered a fraudulent marriage for the purpose of securing immigration benefits. 8 U.S.C. § 1154(c).

IT IS SO ORDERED.

Dated: July 25, 2007

_____
JOSEPH C. SPERO
United States Magistrate Judge